UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
DARNELL HICKS,

                                        Plaintiff,

                    - against -

JUAN ENCARNACION,

                                        Defendant.
-----------------------------------------------------------------------x

**ORDER**

No. 23-CV-1839 (CS)

Appearances:

Darnell Hicks
Kingston, New York
*Pro Se Plaintiff*

Lauren Casparie
Kenneth E. Pitcoff
Morris Duffy Alonso Faley & Pitcoff
New York, New York
*Counsel for Defendant*

Seibel, J.

Before the Court is Plaintiff's motion for a new trial pursuant to Federal Rule of Civil

Procedure 59(a), (ECF No. 142), Plaintiff's motion for sanctions, (ECF No. 141), and Plaintiff's

"motion to obtain the original official recording to ensure an accurate trial record," (ECF No.

143).[1]  For the reasons stated below, Plaintiff's motions are DENIED.[2]

---

[1] Plaintiff filed eight other submissions related to the same issues as the motions, (ECF Nos. 130-33, 139-40, 145-46), which the Court has also considered and addresses below.

[2] "Although a notice of appeal usually divests the district court of jurisdiction, where a party timely files a motion under Rule 59, the district court retains jurisdiction to entertain the motion, even where the notice of appeal was filed prior to the Rule 59 motion." *Azkour v. Little Rest Twelve*, No. 10-CV-4132, 2015 WL 1413620, at *1 (S.D.N.Y. Mar. 23, 2015); *see* Fed. R. App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment – but before it disposes of any motion listed in Rule 4(a)(4)(A) [which includes a motion under Rule 59] – the notice becomes effective to appeal a judgment or order, in whole or

## I.    BACKGROUND

The parties' familiarity with the facts, procedural history and trial record is presumed. Plaintiff commenced this action on March 2, 2023.  (ECF No. 2.)  Plaintiff's complaint raised claims under 42 U.S.C. § 1983 for excessive force, First Amendment retaliation and false arrest against Defendant Juan Encarnacion and three John Doe Defendants, arising from his arrest on April 21, 2022.  Following Defendants' motion for summary judgment, the case proceeded to trial on Plaintiff's claims against Defendant Encarnacion only.  (*See* Minute Entry dated Sept. 24, 2025; ECF No. 91.)  On January 14, 2026, following a three-day jury trial, the jury returned a verdict in favor of Defendant.  (*See* Minute Entry dated Jan. 14, 2026; ECF No. 134.)

## II.   LEGAL STANDARD

"Under Federal Rule of Civil Procedure 59(a)(1) the court may, on motion, grant a new trial on all or some of the issues 'for any reason for which a new trial has heretofore been granted in an action at law in federal court.'"  *Edelman v. NYU Langone Health Sys.*, No. 21-CV-502, 2025 WL 3039930, at *3 (S.D.N.Y. Oct. 31, 2025) (quoting Fed. R. Civ. P. 59(a)(1)(A)). [3]  A motion for a new trial

> may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

*Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

---

in part, when the order disposing of the last such remaining motion is entered.").  Moreover, even if the Notice of Appeal were currently effective, I would deny the motions in an indicative ruling, as authorized by Federal Rule of Civil Procedure 62.1(a).

[3] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, alterations and footnotes. (The Court will provide Plaintiff with copies of any unpublished decisions cited in this Order.)

Whether to grant a new trial pursuant to Rule 59 is in the district court's "sound discretion." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998). But "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 125 (2d Cir. 2024); *see Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003). In other words, "[a] court considering a Rule 59 motion for a new trial . . . should only grant such a motion when the jury's verdict is egregious." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998).

When deciding a Rule 59 motion, "a trial judge is free to weigh the evidence [her]self, and need not view it in the light most favorable to the verdict winner." *Id*. Moreover, "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).

III.    **DISCUSSION**

A.    **Motion for a New Trial**

Plaintiff argues that the Court should grant him a new trial because: (1) the Court ruled that only a limited portion of video evidence could be played to the jury, but Defendant played additional portions of the video which were prejudicial to Plaintiff; (2) Defendant was allowed to play a portion of a video that captured the aftermath of the incident even though the video of the beginning of the incident was unavailable; (3) the Court failed to properly address the missing footage; (4) the jury was "permitted to treat constitutionally protected speech as misconduct or justification" for Defendant's actions; and (5) the Court instructed the jury "to focus only on 'the evidence' and not what they 'hear.'" (ECF No. 130; *see* ECF Nos. 131, 133, 139, 142.)

3

In light of Plaintiff's *pro se* status, I read his papers "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*per curiam*). As explained below, I have considered all of Plaintiff's arguments and find they do not merit a new trial. Moreover, I can conceive of no other ground that would warrant a new trial. *See* Fed. R. Civ. P. 59(d).

### 1.    Alleged Improper Conduct by Defense Counsel

Plaintiff argues that Defendant played portions of a video that the Court had previously ruled inadmissible, resulting in prejudice to him. Plaintiff appears to be referring to Defendant's Exhibit I, which was a video of Plaintiff's arrest from April 16, 2024, two years after the incident at issue in this case. Plaintiff wanted to use a portion of this video in which nonparty Ossining Police Chief Aaron Zimmerman stated that he had previously lied – apparently about what happened to video footage of Plaintiff's arrest on April 21, 2022 at the Village of Ossining courthouse, which is the incident at issue and of which footage was unavailable for trial. (*See* ECF No. 153 ("Conf. Tr.") at 2:5-9; *see also* ECF No. 158 ("FPTC Tr.") at 4:23-5:5, 11:4-7.)[4] Before trial, Defendant's counsel asked to show the jury the remainder of the April 16, 2024 video under Federal Rules of Evidence 106 and 404(b), as it showed Plaintiff making the same kinds of claims (such as his handcuffs being too tight and his being unable to breathe) as he made in connection with the April 21, 2022 arrest. (Conf. Tr. at 2:1-4:4.) As explained in my

---

[4] Zimmerman submitted an affirmation in connection with the motions *in limine* in this case, (ECF No. 97-1), in which he stated that the footage of the incident had been overwritten before any request for it was made. That affirmation was dated November 26, 2025, (*id.*), and thus Zimmerman could not have been saying on the April 16, 2024 video that he lied in that document. The comment apparently relates to a different affidavit that Zimmerman submitted in connection with Plaintiff's criminal case, a portion of which Plaintiff produced to this Court on the eve of trial (but never offered at trial), in which Zimmerman states that he does not know whether any video ever existed from the incident but that video from the camera at the Ossining courthouse is deleted from the system after approximately forty days.

order on Plaintiff's request for transcripts dated January 22, 2026, (ECF No. 138 ("Tr. Order")),

the Court excluded the video in question pursuant to Federal Rules of Evidence 106, 403 and

404(b), but stated that the video could come in to corroborate Zimmerman's expected testimony

that his statement on the video about having lied was a sarcastic response to abusive statements

or behavior by Plaintiff, in the event that Plaintiff denied such statements or behavior, (Conf. Tr.

at 4:5-6:21).

Zimmerman, as expected, testified on direct that on April 16, 2024, when he concurred

with Plaintiff's accusation that he had lied, it was in jest in response to Plaintiff's theatrics. (*See*

ECF No. 157 ("Zimmerman Direct Tr.") at 6:8-9:20.)  Defense counsel offered the video into

evidence during Zimmerman's direct testimony, and Plaintiff did not object. (*See id.* at 10:17-

24.)  Defense counsel then began playing the video, and Plaintiff again did not object.[5] (*See id.*

at 10:25-16:8, 16:13.)  The Court called a sidebar to address the issue, and defense counsel stated

first that he had misunderstood the Court's ruling, and second that the video was admissible even

under the ruling. (*See id.* at 16:9-18:4.)  On the second point, counsel argued that Plaintiff had

opened the door by testifying on cross-examination that he did not say anything abusive to

Zimmerman until *after* Zimmerman said he lied, which the video clearly refutes. (*See id.* at

---

[5] Plaintiff argues that he could not object because he was proceeding *pro se* at trial. (*See* ECF No. 139 ("Because I am proceeding *pro se*, I did not have the same ability as counsel to immediately object."); ECF No. 142 ("Plaintiff was also disadvantaged as a *pro se* litigant and did not have a fair opportunity to stop the improper playback.").)  That argument is frivolous, as Plaintiff had the opportunity to object, and he is not excused from objecting simply because he is proceeding *pro se*. *See Jacobs v. N.Y.C. Dep't of Corr.*, 45 F. App'x 55, 57 (2d Cir. 2002) (summary order) (*pro se* plaintiff waived right to challenge jury instructions on appeal when he raised no objection to them at trial); *Robinson v. Ballard*, No. 13-CV-1213, 2019 WL 4686355, at *4 (N.D.N.Y. Sept. 26, 2019) (*pro se* plaintiff's argument that he should be granted new trial because Court admitted prejudicial evidence failed because plaintiff did not object at trial).  The Court offered to find Plaintiff volunteer counsel for trial, but Plaintiff declined. (ECF No. 91 at 36:4-13.)  Plaintiff chose to represent himself at trial; he cannot use his *pro se* status as an excuse for his own failure to pay attention to the evidence.

17:25-19:15.)  The Court asked Plaintiff if he testified as such on cross-examination, and

Plaintiff confirmed that he had.  (*See id.* at 18:5-19:12.)[6]  In light of Plaintiff's confirmation, I

agreed with counsel's argument that Plaintiff opened the door and permitted the rest of the video

to be played.  (*Id.* at 19:16-17.)

"A court may . . . grant a new trial because of substantial errors in the admission or

exclusion of evidence, [or] prejudicial misconduct from counsel," but "to warrant a new trial,

each of those errors or instances of misconduct, even if proven, must have been clearly

prejudicial to the outcome of the trial, considered in light of the record as a whole."  *Haidon v.

Danaher*, No. 19-CV-119, 2024 WL 3982880, at *3 (D. Conn. Aug. 29, 2024).  Moreover,

"where a Rule 59 movant did not object to admission of evidence at trial, a new trial is warranted

only for plain error so serious and flagrant that it goes to the very integrity of the trial."  *Hardy v.

Adams*, No. 17-CV-1382, 2024 WL 838689, at *7 (N.D.N.Y. Feb. 28, 2024).  Plaintiff has not

approached that level.

Plaintiff argues the Court erred in admitting the video evidence, but he has not shown that

the ruling was erroneous.  *See Jones v. Sansom*, No. 21-CV-442, 2024 WL 2873700, at *6 (D.

Conn. June 7, 2024) ("Courts in this Circuit have held that, to obtain a new trial on the ground of

erroneous evidentiary rulings, a litigant must do more than merely voice a disagreement with the

court's evidentiary rulings."); *Terranova v. Torres*, No. 04-CV-2129, 2010 WL 11507383, at *4

(S.D.N.Y. June 23, 2010) (denying motion for new trial where plaintiff argued that certain

---

[6] A review of the transcript from Plaintiff's cross-examination confirms that Plaintiff testified that he did not make an abusive comment to Zimmerman until after Zimmerman said he had lied.  (*See* ECF No. 155 ("P's Cross Tr.") at 3:4-18.)  Plaintiff admitted that he told Zimmerman that Zimmerman's "dead mother . . . suck dick," but claimed to have said that "after [Zimmerman] admitted that he altered the camera footage."  (*Id.*)  And it is the Court's recollection that the video shows numerous hostile and obnoxious statements by Plaintiff that precede Zimmerman's sarcastic response to Plaintiff's accusation that Zimmerman had lied.

evidentiary rulings were erroneous but did not provide any legal support for his arguments), *aff'd sub nom. Terranova v. New York*, 676 F.3d 305 (2d Cir. 2012).  Further, to the extent defense counsel suggested through his questioning that Plaintiff's behavior on April 16, 2024 was a subsequent similar act because of its similarity to his behavior on April 21, 2022, the Court gave the jury a limiting instruction that they should consider Defendant's Exhibit I only for the limited purpose of "whatever light it sheds on the statement that Mr. Zimmerman made where he said that he lied," (*see* Zimmerman Direct Tr. at 20:19-22), which sufficiently cured any potential prejudice that could have resulted from counsel playing the video, *see Ojeda v. Metro. Transp. Auth.*, 477 F. Supp. 3d 65, 78 (S.D.N.Y. 2020) (new trial not warranted where court gave curative instructions because "juries are presumed to follow their instructions"), *aff'd*, 41 F.4th 56 (2d Cir. 2022); *Tesser v. Bd. of Educ.*, 190 F. Supp. 2d 430, 442 (E.D.N.Y. 2002) ("[A]ny potential prejudice was sufficiently cured" by court's limiting instruction for exhibit), *aff'd*, 370 F.3d 314 (2d Cir. 2004).  Thus, even if it was error to admit Defendant's Exhibit I, or even if counsel engaged in misconduct, Plaintiff has not shown that it was clearly prejudicial to the outcome of the trial, let alone a serious and flagrant error that undermined the integrity of the trial.

Accordingly, Plaintiff's motion for a new trial on this ground is denied.

### 2.    Court Rulings

I address Plaintiff's next two arguments together.  Plaintiff argues that Defendant was unfairly allowed to show body camera footage from when Plaintiff was in the police station after his arrest, even though video from a fixed camera in the Village of Ossining courthouse – which he alleges would have shown the arrest and use of excessive force – was unavailable, (*see* ECF Nos. 130-31), and that the Court erred by failing to properly address the missing footage, (ECF

No. 131).  I construe the latter argument as one that my ruling denying Plaintiff's motion *in limine* seeking an adverse inference or spoliation instruction was erroneous.

As to allowing Defendant to play the police station body camera video from April 21, 2022, Plaintiff did not object to this exhibit in the joint pre-trial order, (ECF No. 82 ("JPTO") at 6), and the Court does not recall Plaintiff objecting at the final pre-trial conference when the Court discussed the video or during trial when Defendant sought to admit the video into evidence.  Plaintiff only argued that he should be entitled to an adverse inference instruction based on the portion of the video that was missing, not that Defendant should not be allowed to play the rest of the video.  (*See, e.g.*, ECF No. 83, 110.)[7]  Thus, Plaintiff cannot now argue that he is entitled to a new trial based on the introduction of this evidence.

Plaintiff also argues his ability to show the courthouse video "was unfairly limited." (ECF No. 131.)  As noted, Defendant submitted an affidavit from Chief Zimmerman explaining that the video from the police department and courthouse had been automatically overwritten after forty days pursuant to the department's retention policies.  (*See* ECF No. 97-1.)  Thus, the video was unavailable.  Even though the Court denied Plaintiff's motion *in limine* for an adverse inference instruction, finding that Defendant lacked the requisite state of mind, I allowed Plaintiff to present evidence to the jury that video footage existed that would have shown the altercation and arrest, and that the video was deleted even though Defendant had a duty to preserve it.  (FPTC Tr. at 24:4-14.)  As will be explained in more detail below, this was an

---

[7] Plaintiff even listed "[s]tation and body Camera Footage," in the JPTO as one of the exhibits to be offered in *his* case-in-chief.  (JPTO at 5.)  At the final pre-trial conference, Plaintiff confirmed that he was referring in the JPTO to the video from the date of the incident that Defendant had submitted with his motion for summary judgment.  (FPTC Tr. at 2:22-3:16.)

entirely reasonable approach often taken by courts in this Circuit. Plaintiff's ability to make his case was not "unfairly limited."

Second, Plaintiff takes issue with my denial of his motion for a spoliation of evidence charge. "It is well-settled that Rule 59 is not a vehicle for relitigating old issues . . . or otherwise taking a second bite at the apple." *Analytical Surveys, Inc.*, 684 F.3d at 52. Although the Court addressed Plaintiff's spoliation argument at the bench ruling on the motions *in limine*, I will address Plaintiff's argument again here.

By motion *in limine* Plaintiff sought an adverse inference instruction based on the footage from the courthouse being unavailable. (ECF No. 83.) At the final pre-trial conference on January 5, 2026, I explained that a party seeking sanctions for spoliation of evidence must show, among other things, that the evidence was destroyed with a culpable state of mind. (FPTC Tr. at 16:24-25, 21:22-24.) *See Boccio v. Costco Wholesale Corp.*, No. 18-CV-4317, 2022 WL 970745, at *3 (E.D.N.Y. Mar. 30, 2022). I further explained that Plaintiff had not shown, either by a preponderance of the evidence or by clear and convincing evidence, that Defendant intentionally destroyed the video footage to deprive Plaintiff of it, because the only evidence that had been submitted was an affidavit from Chief Zimmerman explaining that the Ossining Police Department did not preserve the footage because they did not realize they had a duty to do so before it was automatically overwritten. (FPTC Tr. at 22:7-24:4.) In the absence of any evidence to refute Zimmerman's affidavit or demonstrate that Defendant had a culpable state of mind (other than Plaintiff's own speculation), I denied Plaintiff's motion. (*Id.* at 23:18-24:4.)

Other courts in this Circuit have held that the failure to provide a jury with an adverse inference instruction did not warrant a new trial where a plaintiff failed to make a *prima facie* showing of spoliation. *See, e.g.*, *Kullman v. New York*, No. 07-CV-716, 2012 WL 1142899, at

9

*2 (N.D.N.Y. Apr. 4, 2012) ("While a finding of intentional destruction could support an inference that the evidence would have been unfavorable to the State, the record is devoid of proof supporting a determination of bad faith.  Because [plaintiffs] failed to adduce evidence supporting their theory that the State destroyed or failed to preserve documents relevant to their claims, both the court's declination to provide an adverse inference instruction and the jury's verdict were proper.").  And Plaintiff has not shown, by way of new argument or newly discovered evidence, that this ruling was erroneous.  *See Catlin Specialty Ins. Co. v. QA3 Fin. Corp.*, 36 F. Supp. 3d 336, 340 (S.D.N.Y. 2014) ("A motion for a new trial pursuant to Rule 59 on the basis of an erroneous jury instruction should be granted if an instruction was erroneous, unless the error was harmless."); *see also Jones*, 2024 WL 2873700, at *6 ("[T]o obtain a new trial on the ground of erroneous evidentiary rulings, a litigant must do more than merely voice a disagreement with the court's evidentiary rulings.").

Nor has he shown that the ruling caused a miscarriage of justice or was clearly prejudicial to the outcome of the trial.  *See Kullman*, 2012 WL 1142899, at *2 (no miscarriage of justice warranting new trial where court did not provide jury with adverse inference instruction).  As previewed above, despite denying Plaintiff's motion for an adverse inference, the Court allowed Plaintiff to argue to the jury that the video once existed, that Defendant had a duty to preserve it, and that he did not.  (FPTC Tr. at 24:4-14.)  As explained at the final pre-trial conference, this is an approach routinely taken by courts in this Circuit.  (*See id.*)  *See Castro v. Smith*, No. 16-CV-8147, 2023 WL 5371311, at *13 (S.D.N.Y. Aug. 22, 2023) (permitting plaintiff to present evidence that video of incident existed and that it was deleted despite duty to preserve) (collecting cases); *Ransom v. Andrews*, No. 21-CV-6343, 2022 WL 16555362, at *5 (S.D.N.Y. Oct. 31, 2022) (appropriate remedy for negligent spoliation of video was to permit plaintiff to present

10

evidence that video existed, should have been preserved, and was not, but court would not instruct jury it may or must presume evidence was unfavorable to defendant).  And the Court remembers Plaintiff repeatedly arguing throughout the trial that the video of the incident was missing.  Thus, the Court did not fail to properly address the missing footage as Plaintiff claims; rather, it offered him an appropriate remedy of which he took advantage.

Finally, "[t]o the extent that Plaintiff seeks to rely upon prior arguments made during trial [or the pre-trial proceedings], those arguments are rejected for the reasons already articulated by this Court in connection with its earlier rulings." *Jo v. JPMC Specialty Mortg., LLC*, 369 F. Supp. 3d 511, 519 (W.D.N.Y. 2019), *aff'd*, 818 F. App'x 103 (2d Cir. 2020) (summary order). Thus, the Court's rulings with respect to the video from April 21, 2022 do not warrant a new trial.

### 3.    Instructions to the Jury

Plaintiff also argues that the jury was permitted to treat constitutionally protected speech as misconduct or justification for Defendant's actions, and that the Court improperly instructed the jury "to focus only on 'the evidence' and not what they 'hear.'"  (ECF Nos. 130-31.)

"A motion for a new trial pursuant to Rule 59 on the basis of an erroneous jury instruction should be granted if an instruction was erroneous, unless the error was harmless." *Catlin Specialty Ins. Co.*, 36 F. Supp. 3d at 340.  "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Kirkland v. Cablevision Sys.*, No. 09-CV-10235, 2020 WL 7321358, at *4 (S.D.N.Y. Dec. 11, 2020).  "Rule 51 of the Federal Rules of Civil Procedure requires a party in a civil action to make specific objections to jury instructions before the jury retires to deliberate[ and] [a] party's failure to assert a timely objection results in a waiver of that objection." *O'Connell v. Onondaga*

*County*, No. 09-CV-364, 2013 WL 998598, at *5 (N.D.N.Y. Mar. 13, 2013).  District courts may entertain untimely objections only if the alleged errors are fundamental, meaning that they are "so serious and flagrant that [they] go[] to the very integrity of the trial."  *Shade v. Hous. Auth.*, 251 F.3d 307, 312-13 (2d Cir. 2001).

At the charge conference with the parties, Plaintiff made similar arguments to those advanced here:  that the jury should not be instructed on the elements of disorderly conduct under New York Penal Law § 240.20, because to do so would make his protected speech a crime.  As explained at the charge conference and in the jury instructions, probable cause is a defense to a claim of false arrest.  Defendant argued that he had probable cause to arrest Plaintiff for disorderly conduct under New York Penal Law § 240.20.  Thus, for the purposes of Defendant's probable cause defense, the jury was instructed on the elements of New York's disorderly conduct statute, which makes it a crime to, in a public place:  (1) make unreasonable noise, (2) use abusive or obscene language or make an obscene gesture; or (3) without lawful authority, disturb any lawful assembly or meeting of persons.  *See* N.Y. Penal L. § 240.20(2)-(4).

At the charge conference, when Plaintiff objected to this portion of the charge, I explained that New York's disorderly conduct statute had been limited by *Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. 2001), such that "abusive or obscene language," when directed at a police officer, must amount to fighting words that tend to incite an immediate breach of the peace.  *Id.* at 159-60.  *Provost* thus suggested that speech, if found to constitute such fighting words, may provide a valid basis for arrest under § 240.20.  *See id.* at 160.  And § 240.20 has not been held unconstitutional.  *See generally People v. Tichenor*, 89 N.Y.2d 769 (1997).  Thus, I charged the jury on the elements of § 240.20, but followed the limitations set forth in *Provost*.  Specifically, I informed the jury that "[a]busive or obscene language, when directed at a police

12

officer, must amount to 'fighting words' that tend to incite an immediate breach of the peace" and that "[t]here must be a public dimension of the offensive conduct . . . beyond a private exchange between individuals." (Court Exhibit 2 ("Jury Charge") at 17.)  In other words, "the jury instructions, as a whole, comported with the applicable law, adequately informing the jury of the correct legal standards." *O'Connell*, 2013 WL 998598, at *6.  Plaintiff has neither advanced any argument to the contrary nor provided me with conflicting case law on this point. Thus, Plaintiff has not shown that this instruction was erroneous.  *See id.* (denying plaintiff's motion for new trial where plaintiff failed to show jury instruction was erroneous or provide supporting case law).

Further, to the extent Plaintiff contends that his First Amendment retaliation claim was "improper[ly] fram[ed]," (ECF No. 131), the Court instructed the jury that the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers, including speech or expressive conduct that is offensive, insulting, rude or hateful, and that it prohibits a police officer from restricting speech because of its message, ideas, subject matter or content, (Jury Charge at 20).  Thus, the jury was not permitted to treat any constitutionally protected speech as misconduct.

Next, Plaintiff argues that "[t]he Court's instructions and comments to the jury, including directing the jury to focus only on 'the evidence' and not what they 'hear,' improperly undermined [his] credibility and minimized [his] theory of the case." (ECF No. 130.)  This objection is frivolous.  Although the Court is not sure to which instruction Plaintiff is specifically referring, any such instruction was entirely proper.  As explained in the Tr. Order, (Tr. Order at 3 n.2), the jury was properly instructed, (*see* Jury Charge at 6-7), to consider only evidence in the form of testimony and exhibits, and that what Plaintiff said in his capacity as his own lawyer was

not evidence.  Thus, this instruction accurately states the law, *see* 4 Leonard B. Sand, *et al.*, *Modern Federal Jury Instructions – Civil* § 74.01 (2026), and does not warrant a new trial.

Having found no errors, I need not address Plaintiff's argument that the cumulative effect of the alleged errors deprived him of a fair trial, (*see, e.g.*, ECF Nos. 130-31), except to say that they did not.[8]

### B.    <u>Motion for Sanctions</u>

Plaintiff next seeks sanctions against Defendant and defense counsel "for violating the Court's evidentiary ruling during trial by presenting or playing material that the Court had already excluded." (ECF No. 132; *see* ECF No. 141.)  Plaintiff thus appears to be again referring to Defendant's Exhibit I.

Although the Court does not approve of defense counsel's playing the video without seeking the Court's permission, there is no basis to doubt counsel's representation that he misunderstood the ruling.  (*See* Zimmerman Direct Tr. at 16:13-17:24.)  Accordingly, and in light of the Court's ruling that defense counsel did not improperly play portions of this video, Plaintiff's motion for sanctions is denied.

### C.    <u>Motion for Original Recording</u>

Plaintiff requests "original official audio recording (or any available official recording)" (ECF No. 143), and an order requiring the Clerk of Court or the court reporter "to preserve all

---

[8] To the extent that Plaintiff argues that he is entitled to a new trial or that defense counsel should be sanctioned because of a "pattern of fabrication / mischaracterization" by the Ossining Police Department, (ECF No. 146), this argument is also frivolous here, where the only Defendant is Juan Encarnacion, not the Ossining Police Department.  Moreover, Plaintiff offers nothing beyond vague, conclusory statements about this alleged "pattern," which cannot support a motion for new trial and does not provide a basis for sanctions against Defendant or defense counsel.  *See Haidon*, 2024 WL 3982880, at *16 ("The vagueness of [Plaintiff's] argument [for a new trial] is sufficient to defeat it."); *United States v. Arena*, 918 F. Supp. 561, 576 (N.D.N.Y. 1996) (rejecting as basis for new trial vague argument that rested on speculation).

14

official audio/video recordings of the relevant trial proceedings," (ECF No. 145). Plaintiff makes these requests because "the recording is critical to a fair post-trial review and to ensure the record reflects what actually occurred," (*id.*), and he "is concerned that the written transcript and/or written record has been worded or framed in a way that fits Defendant['s] position rather than reflecting the exact words spoken on the record," (ECF No. 143).

The Court is informed that any video recording of the courtroom, should it exist, would not contain audio, and the Court already ordered that Plaintiff be provided the transcripts for all portions of the pre-trial proceedings and trial that could be relevant to his non-frivolous arguments here and on appeal. (Tr. Order.) Thus, I do not see how audio or video recordings of the courtroom proceedings would provide him with any information he does not already have or otherwise aid his appeal. Although Plaintiff expresses concern that the written transcript has been altered in a way to fit Defendant's position and does not reflect the exact words spoken, he provides no basis for this frivolous argument. Plaintiff argues that "the accuracy of the record is now disputed," (ECF No. 146; *see* ECF No. 151 at 2), but he made that argument before he had even received the transcripts, and he has pointed to nothing that would support his claim. Pursuant to 28 U.S.C. § 753(b), "[a] transcript certified by a court reporter shall be deemed *prima facie* a correct statement of the testimony taken and the proceedings had." *United States v. Hill*, 859 F. App'x 652, 653 (4th Cir. 2021) (*per curiam*). This is because, by law, court reporters must take down the proceedings verbatim. *See* 28 U.S.C. § 753(b) ("Each session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim.") Plaintiff's "bald assertion of error is insufficient to overcome the statutory presumption that the transcript is correct." *Hill*, 859 F. App'x at 653; *see United States v. Kraynak*, No. 17-CR-403, 2025 WL 2375371, at *4 (M.D. Pa. Aug. 14, 2025)

15

(differing recollection of testimony insufficient to overcome presumption that transcript is correct), *appeal docketed*, No. 25-2701 (3d Cir. Sept. 4, 2025).  In short, Plaintiff has provided no reason whatsoever to believe that the Court's highly professional court reporters have violated their obligations to prepare accurate transcripts, or ever would.

Accordingly, Plaintiff's motion to obtain whatever recordings of the proceedings that might exist is denied.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for a new trial, motion for sanctions, and motion to obtain recordings are DENIED.  The Clerk of Court is respectfully directed to terminate the pending motions.  (ECF Nos. 141-43.)

**SO ORDERED.**

Dated: March 27, 2026
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

16